# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| TINA RENEE PENDLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:22-cv-00793-SGC |
| ) | |
| COMMISSIONER, SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Tina Renee Pendley, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Pendley timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.   Background and Procedural History

Pendley completed one year of college and has past relevant work as a

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __.  Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear as: R. __.

licensed practical nurse. (R. 32, 62, 208). Pendley's DIB application alleged disability beginning on June 3, 2019. (R. 185). After her claim was denied initially and on reconsideration, Pendley requested a hearing before an Administrative Law Judge ("ALJ"). (R. 110-15, 124-26). Following the hearing, the ALJ issued an unfavorable decision on November 2, 2021. (R. 18-34, 40-74). Pendley was 50 at the time of her alleged disability onset and was 53 when the ALJ's decision issued. (R. 33-34).

Pendley requested review of the ALJ's decision, which the Appeals Council denied. (R. 1-6, 182-84). The decision then became the final decision of the Commissioner. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Pendley thereafter commenced this action. (Doc. 1).

## II.   Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). An applicant for DIB must demonstrate disability between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F.

App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Pendley would meet the SSA's insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since June 3, 2019, the alleged onset date of her disability.  (R. 20).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(ii) and (c).  At the second step, the ALJ determined Pendley has the severe impairments of obesity and chronic obstructive pulmonary

3

disease ("COPD").  (R. 21).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(iii) and (d).  At the third step, the ALJ determined Pendley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (R. 25).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 404.1520(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 404.1520(a)(4)(iv) and (e).  If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Pendley has the RFC to perform a limited range of medium work.  (R. 26).  Specifically, the ALJ

determined Pendley "is unable to perform in concentrated exposure to hazards, extreme hot temperatures, or environments of fumes, odors, dust, gases, poor ventilation, etc." (*Id.*). At the fourth step, the ALJ determined Pendley cannot perform her past relevant work. (R. 32).

If the claimant is unable to perform her past relevant work, the Commissioner finally must determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Pendley's age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy, such as those of playroom attendant, program aide, and cashier, that Pendley can perform. (R. 34). The ALJ therefore concluded Pendley is not disabled. (*Id.*).

**III.   Standard of Review**

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the

Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

Pendley presents one issue here: the ALJ erred in finding fibromyalgia was not a medically determinable impairment. (Doc. 13 at 16). Pendley contends this conclusion is not supported by substantial evidence. (*Id.* at 16-18). Next, Pendley asserts the ALJ should have further developed the record by: (1) contacting her physicians for a medical source statement ("MSS"); or (2) ordering a consultative examination ("CE"). (*Id.* at 18-19). Each contention is addressed in turn.

The Commissioner's consideration of fibromyalgia is guided by SSR 12-2p (the "Ruling"). The Ruling explains fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Social Security Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia*, 2012 WL 3104869 at *2 (S.S.A. July 25, 2012). The Ruling provides a claimant can show fibromyalgia as a medically determinable impairment by providing evidence from an acceptable medical source; a licensed physician is the only acceptable medical source for evidence of fibromyalgia. *Id*. The Ruling further provides that a physician's diagnosis alone is insufficient. *Id.* Instead:

> . . . evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the

physician's assessment over time of the person's physical strength and functional abilities.

*Id.*

The Ruling describes two methods by which a claimant can establish fibromyalgia as a medically determinable impairment. 2012 WL 3104869 at *2. The methods are based on one of two criteria: (1) the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (the "1990 ACR Criteria"); and (2) the 2010 ACR Preliminary Diagnostic Criteria (the "2010 ACR Criteria"). *Id.* at *2-*3. The 1990 ACR Criteria requires the claimant to show all three of the following: (1) a "history of widespread pain"; (2) physical examination finding at least 11 positive tender points both above and below the waist and both on the left and right sides of the body; and (3) evidence showing "other disorders that could cause the symptoms or signs were excluded." *Id.* at *2-*3. Meanwhile, the 2010 ACR Criteria requires a claimant to establish all three of the following:

> 1. A history of widespread pain . . . ;
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded . . . .

*Id.* at *3 (footnotes omitted).

Here, the ALJ noted Pendley's past medical history of fibromyalgia but concluded the evidence failed to establish it as a medically determinable impairment under the Ruling. (R. 21). The ALJ accurately described the requirements set forth in the Ruling before discussing the deficiencies in the evidence regarding Pendley's fibromyalgia. (R. 21-22). The ALJ noted the record did not include evidence that an examining physician had considered and excluded other conditions which could cause Pendley's symptoms. (R. 22).[3] While Garry W. Magouirk, M.D., ordered imaging on June 2, 2020, he did not assess fibromyalgia in conjunction with these studies. (R. 331-33). Dr. Magourik did assess Pendley as having fibromyalgia during other visits, but his treatment notes do not state whether he considered and excluded other conditions which could have caused Pendley's problems. (R. 350, 355, 479).[4] While Pendley argues she manifested symptoms of fibromyalgia, she does not contend her doctors considered and excluded other potential disorders. (Doc. 13). The ALJ's accurate conclusion in this regard is sufficient to determine Pendley did not satisfy either ACR Criteria, both of which require exclusion of other disorders. *See Davis v. Saul*, No. 20-1284-LSC, 2022 WL 757230, at *5-*6 (N.D.

---

[3] Ultrasounds and X-rays of Pendley's hands were taken on July 7, 2016, due to her report of pain from a ganglion cyst, not to exclude other disorders that could cause her symptoms. (R. 587-88).

[4] Notably, Pendley suffers from other conditions—including arthritis, neuralgia, neuropathy, and primary generalized osteoarthritis—which could be responsible for fibromyalgia-like symptoms. (R. 296, 346, 585, 592, 602, 615, 619, 626, 875, 883); *Edmondson v. Saul*, No. 19-1342-RDP, 2020 WL 3489424, at *9 (N.D. Ala. June 26, 2020).

Ala. Mar. 11, 2022); *Edmondson*, 2020 WL 3489424, at *9.[5] Accordingly, substantial evidence supports the ALJ's conclusion that fibromyalgia was not a medically determinable impairment.

Next, Pendley contends the ALJ erred by failing to develop the record further. As the plaintiff would have it, because the ALJ relied on the lack of evidence excluding other ailments, he should have obtained an MSS or CE for additional evidence. (Doc. 13 at 18-19). In support of this argument, Pendley cites one case: *Montalbano v. Astrue,* No. 11-0600, 2012 WL 3668993 (MD. Ala. Aug. 31, 2012). However, at issue in *Montalbano* were inconsistencies in the treatment record regarding the claimant's pain, the effectiveness of pain medication, and the medication's impacts on her abilities. *Id.* at *6-*7. *Montalbano* does not discuss the Ruling—much less its provisions requiring a physician to exclude other potential disorders causing similar symptoms—which went into effect only a month before the court issued the opinion there.

Other reasons support the ALJ's failure to order additional evidence. First, a CE or MSS is only necessary if the ALJ requires the additional evidence in order to

---

[5] As to the other 1990 ACR Criteria, the ALJ noted physical examinations did not identify tender points in the requisite number or locations. (R. 22). Review of the medical evidence shows the ALJ accurately described deficiencies in the medical evidence. A January 14, 2016 physical exam revealed only 7 out of 11 tender points. (R. 584). On July 7, 2016, physical exam by a nurse practitioner revealed 18 out of 18 tender points. (R. 591). However, a nurse practitioner is not an acceptable medical source under the Ruling. Accordingly, the ALJ did not err in concluding Pendley failed to satisfy the 1990 ACR Criteria. *See Davis*, 2022 WL 757230, at *5-*6; *Edmondson*, 2020 WL 3489424, at *9.

make an informed decision supported by substantial evidence. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988); *see also Strickland v. Colvin*, No. 14-742-CLS, 2015 WL 71776, at *4-*5 (N.D. Ala. Jan. 6, 2015). Likewise, the Ruling provides the option to obtain CEs or MSSs only where the evidence is insufficient. 2012 WL 3104869, at *4. Here, the record includes no indication that any physician who diagnosed Pendley with fibromyalgia also considered and excluded other potential causes of her symptoms. Accordingly, the ALJ made an informed decision that fibromyalgia was not a medically determinable impairment. In any event, the ALJ considered the plaintiff's complaints of pain in determining her RFC. (R. 22-23); *see Davis*, 2022 WL 757230, at *6 (whether fibromyalgia was medically determinable impairment, ALJ considered its effects). Accordingly, the ALJ did not err by failing to obtain additional evidence.

## V.  Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 25th day of September, 2023.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

11